DEBBIE F. SMITH, CATHY CAHALL AND TRACY NEWMAN, PLAINTIFFS v. WILLIAM EDWARD PRIVETTE, INDIVIDUALLY; WHITE PLAINS UNITED METHODIST CHURCH; THE RALEIGH DISTRICT OF THE NORTH CAROLINA CONFERENCE OF THE UNITED METHODIST CHURCH, AND THE NORTH CAROLINA CONFERENCE OF THE UNITED METHODIST CHURCH, DEFENDANTS

No. COA97-199

(Filed 3 February 1998)

**Constitutional Law § 119 (NCI4th); Labor and Employment § 204(NCI4th)— church minister—negligent retention and supervision—First Amendment not implicated**

Claims by former church employees against a church and church organizations for negligent retention and supervision of a

minister based upon sexual misconduct by the minister toward the former employees were not barred by the free exercise of religion clause of the First Amendment since the court will not be required to interpret or weigh church doctrine in adjudicating those claims. U.S. Const. amend. I.

Appeal by plaintiffs from order and judgment filed 31 October 1996 by Judge Henry V. Barnette, Jr. in Wake County Superior Court. Heard in the Court of Appeals 17 November 1997.

*Joyce L. Davis and Associates, by Joyce L. Davis, Zoe G. Mahood, and Dorothy Powers, for plaintiffs appellants.*

*Nicholls & Crampton, P.A., by Robin Adams Anderson, for defendant appellee White Plains United Methodist Church.*

*Elrod Lawing & Sharpless, P.A., by Frederick K. Sharpless, for defendants appellees the Raleigh District of the North Carolina Conference of the United Methodist Church and the North Carolina Conference of the United Methodist Church.*

GREENE, Judge.

Debbie F. Smith (Plaintiff Smith), Cathy Cahall (Plaintiff Cahall), and Tracy Newman (Plaintiff Newman) (collectively referred to herein as Plaintiffs) appeal from an order and judgment dismissing their negligent retention and supervision claim because of lack of subject matter jurisdiction against the White Plains United Methodist Church of Cary (Defendant White Plains), the Raleigh District of the North Carolina Conference of the United Methodist Church (Defendant District), and the North Carolina Conference of the United Methodist Church (Defendant Conference) (Defendant White Plains, Defendant District, and Defendant Conference being collectively referred to herein as the "Church Defendants").

William E. Privette (Privette) and the Church Defendants filed a motion under Rule 12(b)(1) of the North Carolina Rules of Civil Procedure seeking to have the complaint dismissed for lack of subject matter jurisdiction, contending that the claims stated in the complaint are barred by the First Amendment of the United States Constitution, which prohibits any "law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. At the hearing on the motions to dismiss, the trial court considered the pleadings and the affidavit of Kermit Braswell.

The complaint contains allegations that the Plaintiffs were employed in clerical positions at the Defendant White Plains, where Privette was the Senior Pastor; that Privette was ordained by the Defendant Conference; that the Defendant Conference and the Defendant District were responsible for the placement and oversight of Privette, and that they assigned him to the Defendant White Plains and the Defendant White Plains paid his salary; that Privette committed inappropriate, unwelcome, offensive and nonconsensual acts of a sexual nature against the Plaintiffs, variously hugging, kissing and touching them, and made inappropriate, unwelcome, offensive and nonconsensual statements of a sexually suggestive nature to them; that Privette's acts and statements toward the Plaintiffs amount to sexual harassment and assault and battery, causing the Plaintiffs emotional distress, embarrassment, humiliation, and damage to their reputations, professional standing, and career potential. The complaint further states that the Church Defendants knew or should have known of Privette's propensity for sexual harassment of and assault and battery upon female employees and that they failed to take any actions to warn or protect the Plaintiffs from Privette's tortious activity.

Kermit Braswell, District Superintendent of the Raleigh District of the Church Defendants, affirmed in his affidavit that the episcopacy and principle of itinerant general superintendency prescribed by the Constitution of the United Methodist Church are fundamental to the faith of the church; that the appointment and assignment of ordained ministers to local churches by the bishop of the Defendant Conference is part of the principle of itinerant general superintendency; and that the *Book of Discipline*, prescribed by the United Methodist Church Constitution, governs the internal affairs of the United Methodist Church, the procedure for the assignment of ministers to local churches and their supervision, and the procedure for filing grievances against ministers and the disciplining thereof.

The trial court entered an order dismissing Plaintiffs' claims against the Church Defendants for lack of subject matter jurisdiction. The trial court's Memorandum of Decision stated that because the Plaintiffs contend that the Church Defendants were negligent in supervising Privette and not providing a safe working environment, "[i]t follows then that the only effective means of achieving both objectives was for the Conference when first notified of his alleged wrongful acts to have removed Reverend Privette as senior pastor of White Plains"; that the power to discipline and assign or unassign a Methodist minister is within the principle of itinerant general super-

intendency and the exclusive power of episcopacy; and that the power of a secular court to "second guess that power to assign or unassign clergy or to second guess the discipline of clergy is an intrusion into matters of church governance and discipline . . . [and] would constitute an excessive entanglement between church and state thereby violating 'the free exercise of religion' clause of the First Amendment of the United States Constitution." The trial court denied Privette's motion to dismiss.

---

The dispositive issue is whether the First Amendment precludes the filing of a negligent retention and supervision claim against a religious organization, when that claim is based on the conduct of a cleric of that organization.

Lack of subject matter jurisdiction challenges the court's statutory or constitutional power to adjudicate a claim and can be raised at any level of the proceeding. N.C.G.S. § 1A-1, Rule 12(h)(3) (1990); *see Burgess v. Gibbs*, 262 N.C. 462, 465, 137 S.E.2d 806, 808 (1964). "[U]nlike a Rule 12(b)(6) dismissal, the court need not confine its evaluation [of a Rule 12(b)(1) motion] to the face of the pleadings, but may review or accept any evidence, such as affidavits, or it may hold an evidentiary hearing." 2 James W. Moore et al., *Moore's Federal Practice*, § 12.30[3] (3d ed. 1997) [hereinafter 2 *Moore's Federal Practice*]; *see Cline v. Teich*, 92 N.C. App. 257, 264, 374 S.E.2d 462, 466 (1988). If the evaluation is confined to the pleadings, the court must "accept the plaintiff's allegations as true, construing them most favorably to the plaintiff." 2 *Moore's Federal Practice*, § 12.30[4]. Unlike a Rule 12(b)(6) motion, consideration of matters outside the pleadings "does not convert the Rule 12(b)(1) motion to one for summary judgment . . . ." *Id.* An appellate court's review of an order of the trial court denying or allowing a Rule 12(b)(1) motion is *de novo*, except to the extent the trial court resolves issues of fact and those findings are binding on the appellate court if supported by competent evidence in the record. 2 *Moore's Federal Practice*, § 12.30[5].

In this case the Church Defendants argue that the trial court is without subject matter jurisdiction to adjudicate the Plaintiffs' claims against them because the trial court's resolution of these claims necessarily requires inquiry into their religious doctrine and that such an inquiry is not permitted under the First Amendment to the United States Constitution. We disagree.

The First Amendment to the United States Constitution prohibits any "law respecting an establishment of religion, or prohibiting the

free exercise thereof . . . ." U.S. Const. amend. I. The United States Supreme Court has interpreted this clause to mean that the civil courts cannot decide disputes involving religious organizations where the religious organizations would be deprived of interpreting and determining their own laws and doctrine. *See Watson v. Jones*, 80 U.S. (13 Wall.) 679, 20 L. Ed. 666 (1871) (establishing doctrine of judicial abstention in matters which involved interpretation of religious law and doctrine); *Kedroff v. Saint Nicholas Cathedral*, 344 U.S. 94, 97 L. Ed. 120 (1952) (state law which placed ownership of church property in one faction of the Russian Orthodox Church was unconstitutional as it impeded on the authority of the church leaders to decide the issue themselves); *Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440, 21 L. Ed. 2d 658 (1969) (civil courts may intervene in internal church property dispute when neutral principles of law could be applied without interpreting and determining religious doctrine).

The First Amendment, however, does not grant religious organizations absolute immunity from liability. For example, claims against religious organizations have long been recognized for premises liability, breach of a fiduciary duty, and negligent use of motor vehicles. Carl H. Esbeck, *Tort Claims Against Churches and Ecclesiastical Officers: The First Amendment Considerations*, 89 W. Va. L. Rev. 1, 76 (1986); *Moses v. Diocese of Colorado*, 863 P.2d 310, 319 (Colo. 1993), *cert. denied*, 511 U.S. 1137, 128 L. Ed. 2d 880 (1994). Indeed, the "[a]pplication of a secular standard to secular conduct that is tortious is not prohibited by the Constitution." *Moses*, 863 P.2d at 320; *see also Employment Div., Ore. Dept. of Human Res. v. Smith*, 494 U.S. 872, 108 L. Ed. 2d 876 (1990) (finding that even religiously motivated conduct does not have complete immunity from neutral laws which are generally applied). The dispositive question is whether resolution of the legal claim requires the court to interpret or weigh church doctrine. If not, the First Amendment is not implicated and neutral principles of law are properly applied to adjudicate the claim. *See Serbian Eastern Orthodox Diocese for the U.S. and Canada v. Milivojevich*, 426 U.S. 696, 710, 49 L. Ed. 2d 151, 163 (1976).

North Carolina recognizes a cause of action for negligent supervision and retention as an independent tort based on the employer's liability to third parties. *Braswell v. Braswell*, 330 N.C. 363, 373, 410 S.E.2d 897, 903 (1991). To support a claim of negligent retention and supervision against an employer, the plaintiff must prove that "the incompetent employee committed a tortious act resulting in injury to

plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency." *Graham v. Hardee's Food Systems,* 121 N.C. App. 382, 385, 465 S.E.2d 558, 560 (1996) (quoting *Hogan v. Forsyth Country Club Co.,* 79 N.C. App. 483, 495, 340 S.E.2d 116, 124, *disc. review denied,* 317 N.C. 334, 346 S.E.2d 140 (1986)).

We acknowledge that the decision to hire or discharge a minister is inextricable from religious doctrine and protected by the First Amendment from judicial inquiry. We do not accept, however, that resolution of the Plaintiffs' negligent retention and supervision claim requires the trial court to inquire into the Church Defendants' reasons for choosing Privette to serve as a minister. The Plaintiffs' claim, construed in the light most favorable to them, instead presents the issue of whether the Church Defendants knew or had reason to know of Privette's propensity to engage in sexual misconduct, *see Bear Valley Church of Christ v. DeBose,* 928 P.2d 1315, 1323 (Colo. 1996), *cert. denied,* —— U.S. ——, 137 L. Ed. 2d 1049 (1997), conduct that the Church Defendants do not claim is part of the tenets or practices of the Methodist Church. Thus, there is no necessity for the court to interpret or weigh church doctrine in its adjudication of the Plaintiffs' claim for negligent retention and supervision. It follows that the First Amendment is not implicated and does not bar the Plaintiffs' claim against the Church Defendants. Certainly,

> a contrary holding—that a religious body must be held free from any responsibility for wholly predictable and foreseeable injurious consequences of personnel decisions, although such decisions incorporate no theological or dogmatic tenets—would go beyond First Amendment protection and cloak such bodies with an exclusive immunity greater than that required for the preservation of the principles constitutionally safeguarded.

*Jones v. Trane,* 591 N.Y.S.2d 927, 932 (1992).

The trial court thus erred in granting the Rule 12(b)(1) dismissal and this case must be remanded to the trial court.

Reversed and remanded.

Chief Judge ARNOLD and Judge McGEE concur.