REVEREND CARLO DINATALE TARASI, Plaintiff,
v.
MOST REVEREND PETER JUGIS, JCD, DD, (INDIVIDUALLY AND AS THE BISHOP OF THE DIOCESE OF CHARLOTTE) AND THE ROMAN CATHOLIC DIOCESE OF CHARLOTTE, Defendants.
No. COA09-1252.
Court of Appeals of North Carolina.
Filed March 16, 2010.
This case not for publication
Law Office of John F. Hanzel, PA, by John F. Hanzel, for plaintiff-appellant.
Richard A. Lucey, for defendants-appellees.
MARTIN, Chief Judge.
Plaintiff appeals from the trial court's order dismissing his complaint for lack of subject matter jurisdiction. Because we conclude that plaintiff's cause of action would require the trial court to interpret or weigh church doctrine, we affirm the trial court's order.
Plaintiff was ordained into the Catholic priesthood on 2 May 1972 and began working for the Diocese of Charlotte in May 1975. Between 1975 and 2001, plaintiff was a pastor for a number of parishes in the Diocese of Charlotte. However, in 2001, plaintiff alleges that Most Reverend Peter Jugis, JCD, DD ("Reverend Jugis"), the Bishop of the Diocese of Charlotte, refused to grant plaintiff an assignment, despite his numerous requests. Plaintiff also alleges that Reverend Jugis refused to pay plaintiff a salary or "other remuneration." Plaintiff initiated a proceeding to resolve this matter with the Congregation for Clergy ("the Congregation") at the Vatican in Rome, Italy. On 9 December 2005, the Congregation issued a letter to both plaintiff and Reverend Jugis. In the letter to Reverend Jugis, the Congregation instructed him to
provide some priestly ministry for this priest and ensure that [plaintiff] is henceforth to be provided with an adequate means of livelihood and the appropriate necessities as envisioned in canons 281 § 1 and 384 of the Code of Canon Law, and that which is established by Diocesan Particular law regarding the sustenance of clergy.
However, plaintiff alleges that Reverend Jugis never followed the direction of the Congregation and has continued to refuse to give him an assignment or a salary.
On 30 March 2009, plaintiff filed a complaint against Reverend Jugis and the Roman Catholic Diocese of Charlotte in the Superior Court of Mecklenburg County alleging constructive discharge, distress, breach of fiduciary duty, breach of contract, violation of the North Carolina Wage and Hour Act ("Wage and Hour Act"), and unfair and deceptive trade practices. Plaintiff also sought declaratory relief, compensatory damages, and punitive damages. On 8 June 2009, defendants moved to dismiss plaintiff's claims pursuant to North Carolina Rules of Civil Procedure 9(k), 12(b)(1), and 12(b)(6). "[A]fter hearing arguments from counsel, reviewing Memoranda provided by all parties and reviewing the allegations of the Complaint," the trial court granted defendants' motion and dismissed plaintiff's claim for lack of subject matter jurisdiction pursuant to N.C.G.S. § 1A-1, Rule 12(b)(1). Plaintiff appeals.
On appeal, plaintiff challenges only the dismissal, for lack of subject matter jurisdiction, of his claim for relief under the Wage and Hour Act. "Our review of a motion to dismiss under Rule 12(b)(1) of the North Carolina Rules of Civil Procedure is de novo." Stacy v. Merrill, 191 N.C. App. 131, 134, 664 S.E.2d 565, 567 (2008) (internal quotation marks omitted). In reviewing a motion to dismiss for lack of subject matter jurisdiction, "matters outside the pleadings . . . may be considered and weighed by the court in determining the existence of jurisdiction over the subject matter." Tart v. Walker, 38 N.C. App. 500, 502, 248 S.E.2d 736, 737 (1978).
"The First Amendment to the United States Constitution prohibits any `law respecting an establishment of religion, or prohibiting the free exercise thereof. . . .'" Smith v. Privette, 128 N.C. App. 490, 493-94, 495 S.E.2d 395, 397, appeal dismissed, 348 N.C. 284, 501 S.E.2d 913 (1998) (quoting U.S. Const. amend. I). "The United States Supreme Court has interpreted this clause to mean that the civil courts cannot decide disputes involving religious organizations where the religious organizations would be deprived of interpreting and determining their own laws and doctrine." Id. at 494, 495 S.E.2d at 397. Thus, "[t]he dispositive question is whether resolution of the legal claim [brought against a religious organization] requires the court to interpret or weigh church doctrine." Id. at 494, 495 S.E.2d at 398.
N.C.G.S. § 95-25.6 provides that employers must "pay every employee all wages and tips accruing to the employee on the regular payday." N.C. Gen. Stat. § 95-25.6 (2009). N.C.G.S. § 95-25.7 provides that "[e]mployees whose employment is discontinued for any reason shall be paid all wages due on or before the next regular payday either through the regular pay channels or by mail if requested by the employee." N.C. Gen. Stat. 95-25.7 (2009). In his claim for relief pursuant to the Wage and Hour Act, plaintiff alleges that defendants have violated N.C.G.S. §§ 95-25.6 and 952-5.7 by "refus[ing] to comply with the decision and instruction of the Congregation." To determine his claim, the court would be required to determine, under ecclesiastical law, the compensation to which plaintiff is entitled as "an adequate means of livelihood and the appropriate necessities as envisioned in canons 281 § 1 and 384 of the Code of Canon Law, and that which is established by Diocesan Particular law regarding the sustenance of clergy." Such a determination is beyond the subject matter jurisdiction of the North Carolina courts and we must affirm the order of the trial court to dismiss his claim. Plaintiff has not brought forth any arguments with respect to the trial court's dismissal of the other claims alleged in his complaint and we deem his assignments of error as to those claims to have been abandoned. N.C.R. App. P. 28(b)(6) (amended Oct. 1, 2009).
Affirmed.
Judges WYNN and STEPHENS, concur.
Report per Rule 30(e).