IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-126

Filed 19 November 2024

New Hanover County, No. 22 CVS 4009

ROBERT EXUM, Plaintiff,

v.

ST. ANDREWS-COVENANT PRESBYTERIAN CHURCH, INC.; THE PRESBYTERY OF COASTAL CAROLINA, INC.; THE SYNOD OF THE MID-ATLANTIC OF THE PRESBYTERIAN CHURCH (U.S.A.), INC.; PRESBYTERY OF CHARLOTTE, INC., PRESBYTERIAN CHURCH (U.S.A.); and MYERS PARK PRESBYTERIAN CHURCH, INC., Defendants.

Appeal by Defendant St. Andrews-Covenant Presbyterian Church, Inc. from order entered 13 September 2023 by Judge Tiffany Powers in New Hanover County Superior Court. Heard in the Court of Appeals 24 September 2024.

*Ellis & Winters LLP, by Alex J. Hagan and Joseph D. Hammond, for Defendant-Appellant.*

*Dowling PLLC, by Troy D. Shelton, and Mason, Mason, & Smith, by Amanda B. Mason and Sarah C. Thomas, for Plaintiff-Appellee.*

COLLINS, Judge.

Defendant St. Andrews-Covenant Presbyterian Church, Inc., appeals from the trial court's order denying its motion to dismiss. St. Andrews-Covenant argues that the trial court's denial of its Rule 12(b)(1) motion violates St. Andrews-Covenant's First Amendment rights because the adjudication of Plaintiff Robert Exum's claims requires inquiry into St. Andrews-Covenant's religious doctrine. This argument lacks

merit. Because neutral principles of law can be applied to adjudicate Exum's claims, without inquiring into ecclesiastical matters, the trial court did not err. St. Andrews-Covenant's remaining arguments, based on the trial court's denial of its Rule 12(b)(6) motion, are dismissed as interlocutory. Accordingly, we affirm in part, dismiss in part, and remand for further proceedings.

## I.    Background

Exum commenced this action on 23 November 2022 by filing a complaint for negligent retention, negligent infliction of emotional distress, and breach of fiduciary duty against the following defendants: St. Andrews-Covenant; The Presbytery of Coastal Carolina, Inc. ("Presbytery Coastal"); The Synod of the Mid-Atlantic of the Presbyterian Church (U.S.A.), Inc. ("The Synod"); Presbytery of Charlotte, Inc., Presbyterian Church (U.S.A.) ("Presbytery Charlotte"); and Myers Park Presbyterian Church, Inc. ("Myers Park Presbyterian"). In his complaint, Exum alleges the following:

Exum and his former Wife were married from 26 September 1987 until their divorce on 21 October 2021. Exum and Wife were regular attendees of St. Andrews-Covenant, located in Wilmington, North Carolina. In September 2017, Pastor Derek Macleod was transferred to St. Andrews-Covenant from Myers Park Presbyterian. Macleod had served as associate pastor at Myers Park Presbyterian since 2014 and had had inappropriate sexual relations with parishioners while there. In or around early 2020, Macleod, who was also married, began a romantic

relationship with Wife. Macleod and Wife kept their relationship a secret from their respective spouses. In February 2020, Macleod encouraged Wife to travel without Exum to El Salvador on a missionary trip, where further marital misconduct between Macleod and Wife transpired. This missionary trip occurred under the leadership of Myers Park Presbyterian and Presbytery Charlotte. Within three days of returning from this trip, Wife informed Exum that she planned to leave their marriage. Exum inadvertently saw explicit messages between Wife and Macleod on 31 March 2021. Wife and Macleod confirmed the existence of their relationship to Exum a few weeks later.

Macleod resigned from St. Andrews-Covenant in December 2020 and became an interim pastor at Presbytery Coastal. Presbytery Coastal oversees St. Andrews-Covenant, and Presbytery Charlotte oversees Myers Park Presbyterian. The Synod has authority over Presbytery Coastal and Presbytery Charlotte. Presbytery Coastal, Presbytery Charlotte, and The Synod all had authority over Macleod and placed him at St. Andrews-Covenant, despite his past misconduct while on staff at Myers Park Presbyterian. Macleod resigned from his position at Presbytery Coastal in September 2022.

The Synod filed a motion for summary judgment, while Presbytery Coastal, Presbytery Charlotte, and Myers Park Presbyterian all filed motions to dismiss Exum's claims. St. Andrews-Covenant filed a motion to dismiss Exum's claims pursuant to Rules 12(b)(1) and 12(b)(6). The trial court granted The Synod's motion

for summary judgment[1] and the other defendants' motions to dismiss. In a separate order, the trial court denied St. Andrews-Covenant's motion to dismiss. St. Andrews-Covenant appeals.

## II.    Discussion

### A. Appellate Jurisdiction

As an initial matter, we address our jurisdiction over the issues before us. First, the trial court's order denying St. Andrews-Covenant's Rule 12(b)(1) and Rule 12(b)(6) motion to dismiss is interlocutory. *See Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950) ("An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.") (citation omitted). "Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Clements v. Clements*, 219 N.C. App. 581, 583, 725 S.E.2d 373, 375 (2012) (quotation marks and citation omitted). An interlocutory order may, however, be immediately appealable "if the order implicates a substantial right of the appellant that would be lost if the order was not reviewed prior to the issuance of a final judgment." *Keesee v. Hamilton*, 235 N.C. App. 315, 320, 762 S.E.2d 246, 249 (2014) (citation omitted); N.C. Gen. Stat. § 7A-27(b)(3)(a) (2023).

A trial court's denial of a church's Rule 12(b)(1) motion to dismiss based on an

---

[1] While the order granting The Synod's motion for summary judgment does not appear in the record, the parties reference this order in their briefs and the order is not at issue on appeal.

assertion that "a civil court action cannot proceed [against a church defendant] without impermissibly entangling the court in ecclesiastical matters" is immediately appealable because the defendant would be "irreparably injured if the trial court becomes entangled in ecclesiastical matters from which it should have abstained." *Harris v. Matthews*, 361 N.C. 265, 270-71, 643 S.E.2d 566, 569-70 (2007).

Here, St. Andrews-Covenant argues that the trial court's order violated its First Amendment rights by entangling itself with ecclesiastical matters, thus affecting a substantial right. Accordingly, the trial court's order denying St. Andrews-Covenant's Rule 12(b)(1) motion to dismiss is immediately appealable.

Next, Exum contends that St. Andrews-Covenant's appeal, as it pertains to the trial court's denial of its Rule 12(b)(6) motion, should be dismissed. Our appellate rules require an appellant, when appealing an interlocutory order, to provide this Court with a jurisdictional statement "contain[ing] sufficient facts and argument to support appellate review on the ground that the challenged order affects a substantial right." N.C. R. App. P. 28(b)(4) (2023). In its appeal, St. Andrews-Covenant argues only that the trial court's denial of its Rule 12(b)(1) motion is an appealable interlocutory order; St. Andrews-Covenant makes no such argument as to its Rule 12(b)(6) motion. When addressing the merits of its appeal, however, St. Andrews-Covenant raises arguments that pertain to a Rule 12(b)(6) analysis and that St. Andrews-Covenant had previously raised in the trial court under Rule 12(b)(6). This Court does not have jurisdiction over those arguments. Accordingly, we dismiss

all arguments stemming from the trial court's denial of St. Andrews-Covenant's Rule 12(b)(6) motion to dismiss.

Finally, Exum invites us to "note in [our] opinion that the trial court should reconsider, under Civil Rule 54(b), whether the claims against the other defendants should be reinstated." We have no jurisdiction over this issue and decline this invitation.

## B. Rule 12(b)(1) Motion to Dismiss

St. Andrews-Covenant argues that Exum's claims should have been dismissed pursuant to Rule 12(b)(1) because the trial court's adjudication of Exum's claims requires inquiry into St. Andrews-Covenant's religious doctrine and thus violates the First Amendment. We disagree.

This Court reviews a trial court's denial of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction de novo. *Harris*, 361 N.C. at 271, 643 S.E.2d at 570. "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *McAdoo v. Univ. of N.C. at Chapel Hill*, 225 N.C. App. 50, 51, 736 S.E.2d 811, 814 (2013) (quotation marks and citations omitted).

The First Amendment to the United States Constitution protects against any law "respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. "The United States Supreme Court has interpreted this clause to mean that the civil courts cannot decide disputes involving religious organizations

where the religious organizations would be deprived of interpreting and determining their own laws and doctrine." *Smith v. Privette*, 128 N.C. App. 490, 494, 495 S.E.2d 395, 397 (1998) (citation omitted).

As applied to the states through the Fourteenth Amendment, the First Amendment also prohibits state tribunals from adjudicating actions based on religious doctrine. *See Doe v. Diocese of Raleigh*, 242 N.C. App. 42, 47, 776 S.E.2d 29, 34-35 (2015). State courts are therefore prohibited "from becoming entangled in ecclesiastical matters and have no jurisdiction over disputes which require an examination of religious doctrine and practice in order to resolve the matters at issue." *Id.* at 47, 776 S.E.2d at 34-35 (quotation marks and citations omitted); *see also W. Conf. of Original Free Will Baptists of N.C. v. Creech*, 256 N.C. 128, 140, 123 S.E.2d 619, 627 (1962) ("The legal or temporal tribunals of the State have no jurisdiction over, and no concern with, purely ecclesiastical questions and controversies . . . .") (citation omitted).

The First Amendment, however, does not grant immunity to religious organizations from all claims. *See Smith*, 128 N.C. App. at 494, 495 S.E.2d at 397. It is well-established that "the [a]pplication of a secular standard to secular conduct that is tortious is not prohibited by the Constitution." *Id.* (quotation marks and citations omitted). "The dispositive question is whether resolution of the legal claim requires the court to interpret or weigh church doctrine. If not, the First Amendment is not implicated and neutral principles of law are properly applied to adjudicate the

claim." *Id.* at 494, 495 S.E.2d at 398 (citing *Serbian E. Orthodox Diocese for the U.S. and Canada v. Milivojevich*, 426 U.S. 696, 710 (1976)).

In *Smith*, the plaintiffs brought a negligent retention and supervision claim against certain church defendants based on their alleged negligence in retaining and supervising a pastor accused of committing acts of sexual misconduct against the plaintiffs. 128 N.C. App. at 491-92, 495 S.E.2d at 396. The issue was "whether the [c]hurch [d]efendants knew or had reason to know of [the pastor's] propensity to engage in sexual misconduct, . . . conduct that the [c]hurch [d]efendants d[id] not claim [wa]s part of the tenets or practices of the Methodist Church." *Id.* at 495, 495 S.E.2d at 398 (citation omitted).

Reversing the trial court's dismissal of the church defendants under Rule 12(b)(1), the Court explained, "[T]here is no necessity for the court to interpret or weigh church doctrine in its adjudication of the [p]laintiffs' claim for negligent retention and supervision. It follows that the First Amendment is not implicated and does not bar the [p]laintiffs' claim against the [c]hurch [d]efendants." *Id.* The Court emphasized that a contrary holding "would go beyond First Amendment protection and cloak such [religious] bodies with an exclusive immunity greater than that required for the preservation of the principles constitutionally safeguarded." *Id.* (citation omitted).

Here, Exum brought claims against St. Andrews-Covenant for negligent retention, negligent infliction of emotional distress, and breach of fiduciary duty. As

St. Andrews-Covenant concedes, each of these claims is premised on alleged negligence in placing and retaining Macleod at St. Andrews-Covenant.

The allegations made by Exum mirror those made by the plaintiffs in *Smith*. Exum alleges that St. Andrews-Covenant was negligent in allowing Macleod's tortious conduct to occur because St. Andrews-Covenant knew or should have known that Macleod had engaged in similar misconduct in his capacity as a church leader in prior roles. Therefore, Exum alleges, St. Andrews-Covenant knew or should have known that the bringing and retaining Macleod as an employee of its church would present a danger to parishioners.

Exum's claims thus present the issue of whether St. Andrews-Covenant knew or had reason to know of Macleod's propensity to engage in sexual misconduct with married members of the congregation. As in *Smith*, "there is no necessity for th[is] [C]ourt to interpret or weigh church doctrine in its adjudication of" Exum's claims premised on alleged negligence in placing and retaining Macleod at St. Andrews-Covenant. *Id.* "It follows that the First Amendment is not implicated and does not bar" Exum's claims against St. Andrews-Covenant. *Id.* As the Court in *Smith* explained, a contrary holding "would go beyond First Amendment protection and cloak such [religious] bodies with an exclusive immunity greater than that required for the preservation of the principles constitutionally safeguarded." *Id.* (citation omitted).

### III.  Conclusion

The trial court did not err by denying St. Andrews-Covenant's Rule 12(b)(1) motion to dismiss. St. Andrews-Covenant's appeal, to the extent it is based on the trial court's denial of its Rule 12(b)(6) motion, is dismissed. Accordingly, we affirm in part, dismiss in part the trial court's order, and remand for further proceedings.

AFFIRMED IN PART; DISMISSED IN PART; AND REMANDED.

Judges TYSON and GRIFFIN concur.