DIETZ, Judge.
 

 *224
 
 This dispute between a church and some of its former members returns to us for a second time. Our review is constrained by the mandate in the previous decision of this Court, and the limits on judicial intervention in the governance of religious bodies established in the First Amendment to the United States Constitution.
 

 As explained below, we affirm the trial court's judgment that, applying neutral principles of law, the church did not follow the procedure established in its bylaws when it attempted to amend them. Because the bylaws govern some non-ecclesiastical issues involving church property and contract rights, courts have the power to adjudicate this issue. With respect to the remaining issues on appeal, concerning removal and election of church deacons and trustees, the bylaws are silent. The courts can play no role in the resolution of those issues. We therefore affirm the trial court's order in part and vacate the order in part.
 

 Facts and Procedural History
 

 In 2013, Plaintiffs, all of whom were active, voting members of New Zion Baptist Church, sued the Church and its pastor, Henry Williams, Jr.
 

 All of Plaintiffs' claims stemmed from the Pastor's management of Church finances and a decision by the Church in 2013 to amend the Church bylaws, changing various tenets of Church doctrine as well as other aspects of the Church's day-to-day operations. The trial court denied the Church's motion to dismiss for lack of subject matter jurisdiction, rejecting the argument that the First Amendment barred the courts from adjudicating these claims.
 

 This Court affirmed the trial court in part.
 
 Davis v. Williams
 
 ,
 
 242 N.C. App. 262
 
 ,
 
 774 S.E.2d 889
 
 (2015). We held that courts had the power to adjudicate Plaintiffs' claim with respect to the Church's breach of its own bylaws, but only to the extent that this claim involved application of neutral principles of law to Church rules that did not involve doctrine or religious practice.
 

 Id.
 

 On remand, the trial court entered summary judgment holding that the Church "violated its Bylaws in its 2013 attempts to vote on proposed amendments" and therefore those amendments were void. The trial court also found that, because the existing bylaws were "silent as to the process for removing deacons and trustees," the trial court could not play any role in reviewing the removal of those officers from their posts. But the trial court nevertheless ordered the Church to hold an election
 
 *225
 
 "to fill vacancies in the office of deacon and trustee ... at the next regular business meeting of the church, but in any event, no later than ninety (90) days from the filing of this Order." Both parties timely appealed portions of the trial court's ruling.
 

 Analysis
 

 I. Standing
 

 We begin with the Church's argument that Plaintiffs lack standing to pursue their claims.
 

 Standing is a jurisdictional principle that stems from the notion of "justiciability." It is designed to ensure that a party seeking relief from the courts has a sufficient stake in the controversy to justify adjudication of the dispute.
 
 See
 

 Neuse River Found., Inc. v. Smithfield Foods, Inc
 
 .,
 
 155 N.C. App. 110
 
 , 114,
 
 574 S.E.2d 48
 
 , 51-52 (2002). There is a well-established body of case law governing standing in the federal courts. But because "North Carolina courts are not constrained by the 'case or controversy' requirement of Article III of the United States Constitution," our State's standing jurisprudence is broader than federal law.
 

 Id.
 

 at 114
 
 ,
 
 574 S.E.2d at 52
 
 . Although our Supreme Court has declined to set out specific criteria necessary to show standing in every case, the Supreme Court has emphasized two factors in its cases examining standing: (1) the presence of a legally cognizable injury; and (2) a means by which the courts can remedy that
 
 *728
 
 injury.
 
 See, e.g.,
 

 Goldston v. State
 
 ,
 
 361 N.C. 26
 
 , 34-35,
 
 637 S.E.2d 876
 
 , 881-82 (2006).
 

 Here, Plaintiffs were voting members of the Church in good standing at the time of the alleged violations of the Church bylaws, and at the time they filed this lawsuit. They alleged that they were harmed, as voting members of the Church, by the Church's failure to follow the proper voting procedure when amending the bylaws.
 

 But the Church asserts in its brief that, "[a]fter this lawsuit was filed, plaintiffs were advised ... they are no longer members of the church." Thus, the Church argues, Plaintiffs no longer have standing because, as non-members of the Church, they have no right to challenge the Church bylaws or voting practices.
 

 We disagree. Because the injury Plaintiffs allegedly suffered occurred during a time that the parties concede they were active members of the Church, and because that injury has not been resolved or redressed among these parties, we hold that Plaintiffs have a sufficient stake in the controversy to confer standing despite their removal as
 
 *226
 
 members after the lawsuit began.
 
 See
 

 Metcalf v. Black Dog Realty, LLC
 
 ,
 
 200 N.C. App. 619
 
 , 625,
 
 684 S.E.2d 709
 
 , 714 (2009).
 

 II. Trial court's entry of summary judgment
 

 We next turn to the merits of the parties' arguments. This case returns to us with the parties asserting many of the same arguments they asserted in
 
 Davis I
 
 . Since then, the law has not changed. As we explained in
 
 Davis I
 
 , "[t]he First Amendment of the United States Constitution prohibits a civil court from becoming entangled in ecclesiastical matters. However, not every dispute involving church property implicates ecclesiastical matters."
 
 242 N.C. App. at 264
 
 ,
 
 774 S.E.2d at 892
 
 (quoting
 
 Johnson v. Antioch United Holy Church, Inc.
 
 ,
 
 214 N.C. App. 507
 
 , 510-11,
 
 714 S.E.2d 806
 
 , 810 (2011) ). Courts may resolve disputes involving a religious institution through "neutral principles of law."
 

 Id.
 

 "The dispositive question is whether resolution of the legal claim requires the court to interpret or weigh church doctrine."
 

 Id.
 

 We first address the portion of the trial court's order that declared the 2013 amendments to the Church's bylaws void. As our analysis in
 
 Davis I
 
 indicates, this portion of the order did not violate the First Amendment. Although with respect to the "establishment and exercise of church polity the civil courts have no jurisdiction or right of supervision," the courts can determine "whether the church tribunal acted within the scope of its authority and observed its own organic forms and rules" with respect to "civil, contract or property rights."
 
 Western Conference of Original Free Will Baptists of North Carolina v. Creech
 
 ,
 
 256 N.C. 128
 
 , 140-41,
 
 123 S.E.2d 619
 
 , 627 (1962).
 

 Put another way, when the Church creates written bylaws that govern the use of church property, and other matters unrelated to church doctrine and religious practice, courts can review whether the Church and its members followed the procedural rules created in those bylaws.
 
 Davis I,
 

 242 N.C. App. at 265
 
 ,
 
 774 S.E.2d at 892
 
 . The trial court did so, consistent with our mandate from
 
 Davis I
 
 , when it declared that the means by which the Church and its members voted to amend the bylaws violated the procedure established in the bylaws. We therefore affirm that portion of the trial court's judgment.
 

 The Church next challenges the portion of the trial court's ruling that is, in effect, a mandatory injunction stating that "[a]n election to fill vacancies in the office of deacon and trustee shall be held at the next regular business meeting of the church, but in any event, no later than ninety (90) days from the filing of this Order." The Church, citing
 
 Creech
 
 , argues that this portion of the trial court's order impermissibly assumes
 
 *227
 
 a supervisory role over Church governance. Plaintiffs concede that the trial court "exceed[ed] its authority by ... ordering a new vote." We agree and therefore vacate this portion of the trial court's order.
 

 Finally, we agree with the Church that the trial court properly determined it could play no part in determining whether deacons and trustees properly were removed from their posts. As the trial court held, the
 
 *729
 
 Church bylaws "are silent as to the process for removing deacons and trustees." Neither party directs this Court to any neutral principles of law that would permit this Court to fill in the gaps. With no neutral principles to apply, the courts have no authority to wade into when and how these church leaders are removed from office.
 

 Id.
 

 Conclusion
 

 Consistent with our previous mandate in this case, we affirm the trial court's judgment that the 2013 proposed amendments to the Church bylaws are void because, applying neutral principles of law, the Church did not properly use the procedure contained in the bylaws when attempting to amend them.
 

 We vacate the portion of the trial court's order requiring the Church to hold elections to fill vacancies in the offices of Church deacons and trustees at a specified time.
 

 VACATED IN PART AND AFFIRMED IN PART.
 

 Judges ELMORE and HUNTER, JR. concur.